IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**KIRK'S EXCAVATING, INC.**                                                                    **PLAINTIFF**

V.                                       **CASE NO. 3:23-CV-3003**

**KHOL COMPANY, LLC;**
**TOM BARBER; and**
**CANDICE BARBER**                                                                            **DEFENDANTS**

### OPINION AND ORDER

Before the Court is a Motion to Dismiss (Doc. 31) under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Motion is brought jointly by separate Defendants Tom and Candice Barber. Plaintiff Kirk's Excavating, Inc. ("KEI") opposes the Motion. See Docs. 35 & 36. For the reasons explained below, the Motion is **DENIED**.

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). In evaluating personal jurisdiction, the Court must view the evidence "in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Moreover, the Court is not restricted to the pleadings alone but may also consider "the affidavits and exhibits presented with the motions and oppositions thereto." *Dever*, 380 F.3d at 1072 (quotation and citation omitted).

According to the Amended Complaint (Doc. 9), Plaintiff KEI is an Arkansas corporation that entered into a contract for services with Defendant Khol Company, LLC, whose two members, Eric Fein and Tom Barber, are both citizens of Texas. KEI claims that its principal, Kirk Powell, communicated directly with Khol's principal, Mr. Barber, by text message and email about a project. Kohl was looking for an Arkansas company to haul between 15,000 and 25,000 tons of sand from a job site in Green Forest, Arkansas, to a job site in Van Buren, Arkansas. After some back-and-forth negotiation, KEI agreed to haul the sand for $25.75 per ton. KEI then reduced the parties' agreement to a single document, titled "Independent Contractor Agreement" ("Agreement"), and emailed it to Mr. Barber on September 7, 2022. Though Mr. Barber did not sign the agreement right away, KEI trusted that they had a deal and began hauling sand on September 8.

On September 12, 2022, KEI sent Kohl its first of many invoices, all of which went unpaid. Nevertheless, KEI continued hauling sand through the month of September. On October 4, Mrs. Barber emailed Mr. Powell the executed Agreement bearing Mr. Barber's signature. See Doc. 9-2. In the email, Mrs. Barber stated: "Kirk, please confirm receipt of attached contract. Our apologies, our understanding was that this was sent a few weeks back. If you have any questions please give Tom a shout. Thank you for your time and patience." (Doc. 35-1, p. 6).

By October 19, 2022, KEI had hauled almost 12,000 tons of sand and had invoiced Kohl for a total of $303,958.00. KEI's demands for payment went unanswered, and it filed suit against Kohl in state court on November 21, 2022, alleging breach of contract. (Doc. 3). Kohl removed the case to this Court and filed its answer (Doc. 6).

According to Kohl's answer to the original complaint, there was no valid contract between the parties because Mr. Barber's signature on the Agreement was *forged* by his wife. Kohl also maintained that Mrs. Barber was not an employee of Kohl, so she was not authorized to sign contracts on behalf of the company. *See* Doc. 6, ¶¶ 32, 33. After receiving Khol's answer, KEI filed an Amended Complaint (Doc. 9) that added an alternative claim for unjust enrichment and a new cause of action for fraud against Khol and two new defendants: Mr. and Mrs. Barber. KEI contends that Mr. and Mrs. Barber colluded with Khol to defraud KEI of over $300,000 in sand-hauling services.

Though Kohl has submitted to suit in Arkansas, Mr. and Mrs. Barber argue that the Court lacks personal jurisdiction over them. They believe they are not subject to suit in Arkansas because they are citizens of Texas, own no property in Arkansas, have never paid income or personal property taxes in Arkansas, and "have never transacted business in Arkansas in [their] personal capacit[ies]." *See* Doc. 31-1, ¶¶ 7–8; Doc. 31-2, ¶¶ 8–9. In response to the Motion to Dismiss, KEI has supplemented the record with more than 80 pages of emails and text messages between representatives of KEI and Mr. and Mrs. Barber regarding the sand-hauling agreement. *See* Doc. 35-1. The Court views these additional materials, along with the factual allegations in the Amended Complaint, in the light most favorable to KEI for purposes of evaluating the personal jurisdictional issue.

The Arkansas long-arm statute authorizes the exercise of personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101. The Due Process Clause allows courts to exercise personal jurisdiction only when a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The following factors are relevant when deciding whether a nonresident defendant has sufficient minimum contacts with the forum state: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.  *See Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).

After due consideration, the Court finds that the first and third factors weigh decisively in KEI's favor.  Mr. Barber, on behalf of Kohl, purposefully solicited Arkansas contractors on Facebook in an effort to find a suitable company to perform sand-hauling work exclusively in Arkansas.  *See* Doc. 35-2.  Once Mr. Barber made contact with Mr. Powell of KEI, the men exchanged various emails and text messages about the specifics of the job.  In those messages, Mr. Barber encouraged Mr. Powell to begin hauling immediately.  *See, e.g.,* Doc. 35-1, pp. 19–20 ("Let's plan on starting the trucking tomorrow!"; "We need to build momentum this week!").  Though Kohl claims that Mrs. Barber was not a company employee, *see* Doc. 22, ¶ 4, she was copied on emails and text messages between Kohl and KEI concerning the sand-hauling job, and she authored various emails regarding the parties' Agreement.  The email address she used was a company email address, and she signed her emails as a Khol's employee, including the company's name, business address, and telephone number.  *See* Doc. 35-1, pp. 5–6. Given these facts, the Barbers' contacts with Arkansas were not "random, fortuitous, or attenuated," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), but were instead

4

central to an alleged scheme to avail themselves and Kohl of the privileges and benefits of conducting business in Arkansas with an Arkansas company.

It is notable here that Mr. and Mrs. Barber are accused of committing fraud. The purposeful nature of such conduct bears directly on the Court's analysis of personal jurisdiction—both with respect to the third *Land-O-Nod* factor, which is the relationship between the tortious conduct and the Barbers' contacts with Arkansas, and the fourth factor, which concerns Arkansas's interest in providing a forum to its aggrieved citizen, KEI. When a plaintiff asserts that a defendant has committed an intentional tort, the so-called "effects test" announced by the Supreme Court in *Calder v. Jones* asks the court to consider whether the tortious conduct was "expressly aimed" at the forum state, such that personal jurisdiction is appropriate in the forum. 465 U.S. 783, 787–89 (1984). If the defendant "knew that the brunt of the injury would be felt by [the plaintiff]" in that state, then he "must reasonably anticipate being haled into court there to answer for [the tort]." *Id.* at 789–90 (quotation marks and citations omitted).

Viewing the facts in the record in the light most favorable to KEI, the Court finds that Mr. Barber intended the effects of his tortious conduct to be felt in Arkansas. He solicited an Arkansas company to move Arkansas natural resources (sand) between two cities within the state. Once KEI performed this work, Mr. Barber schemed with Kohl to defraud KEI of payment, harming Arkansas workers in the process. Mrs. Barber was also aware of Kohl's desire to move sand from one city in Arkansas to another, and she, too, made purposeful contact with KEI—as Kohl's agent—in furtherance of the scheme to defraud. The totality of these circumstances satisfies the first, third, and fourth factors of the *Land-O-Nod* test and the *Calder* effects test and therefore weigh in favor of exercising

personal jurisdiction over Mr. and Mrs. Barber.[1] Accordingly, **IT IS ORDERED** that Motion to Dismiss (Doc. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Tom and Candice Barber file their answers to the Amended Complaint within 14 days of the file date of this Order.

**IT IS SO ORDERED** on this 2nd day of June, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] The second and fifth *Land-O-Nod* factors are neutral.