IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | |
|---|---|
| **KIRK'S EXCAVATION, INC.** | **PLAINTIFF/COUNTER-DEFENDANT** |
| V. | CASE NO. 3:23-CV-3003 |
| **KHOL COMPANY, LLC;** | |
| **TOM BARBER; and** | |
| **CANDICE BARBER** | **DEFENDANTS/COUNTER-PLAINTIFFS** |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions filed by Plaintiff/Counter-Defendant Kirk's Excavation, Inc. ("KEI"):

- Motion for Summary Judgment as to the Claims in the Second Amended Complaint (Doc. 104);

- Motion for Summary Judgment as to Defendants/Counter-Plaintiffs Tom and Candice Barber's First Amended Counterclaims (Doc. 107); and

- Motion for Summary Judgment as to Defendant/Counter-Plaintiff Khol Company, LLC's ("Khol") First Amended Counterclaims (Doc. 110).[1]

Also before the Court are Tom and Candice Barber's separate Cross-Motions for Summary Judgment as to KEI's claims against them. *See* Docs. 113 & 116.[2]

For the reasons stated below, KEI's Motions for Summary Judgment are **GRANTED IN PART AND DENIED IN PART**; Tom Barber's Cross-Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**; and Candice Barber's Cross-Motion for Summary Judgment is **GRANTED**.

---

[1] Khol and the Barbers filed Responses to these Motions, *see* Docs. 128–29, 133–34, 137–45; and KEI filed Replies, *see* Docs. 148–50.

[2] KEI filed Responses to both Motions. *See* Docs. 124–27, 130–32.

1

## I. BACKGROUND

In 2022, Khol hired KEI to haul sand from a pit in Green Forest, Arkansas, to a distribution center in Van Buren, Arkansas. Khol's manager, Tom Barber, negotiated the terms of the hauling agreement with KEI's manager, Kirk Powell. The men agreed to some terms by text, others by email, and still others via oral communication. By the beginning of September 2022, KEI was ready to begin hauling but wanted a written contract memorializing all terms. Mr. Powell prepared the contract and emailed it to Mr. Barber on September 7, 2022. KEI began hauling sand the following day, September 8, even though Mr. Barber had not yet signed the contract. *See* Doc. 104-1. The contract states that KEI agrees to haul "[a]pproximately 15,000–25,000 tons of Sand from William Chaney Sand Pit, Green Forest, AR to Five Rivers Distribution, Van Buren, AR" in exchange for payment "on 15 day terms at $25.75 per ton." *Id.*

Though KEI hauled thousands of tons of sand over the next several weeks, Mr. Barber didn't sign the contract and Khol never paid a dime. Mr. Powell became antsy about the situation and pressed Mr. Barber to sign the contract and pay KEI for its work. On October 4, 2022, Mr. Barber's wife Candice finally emailed the signed contract to KEI. She had signed her husband's name to the contract on behalf of Khol. Less than a week later, on October 10, 2022, KEI stopped hauling sand. Thirty days had passed without Khol making a single payment. On October 31, Khol's other manager, Eric Fein, emailed Mr. Powell to advise him of Khol's position: The company had no intention of paying him because the contract "[had] not [been] signed by an authorized representative of Khol Company" and KEI's invoices did not specifically list Khol's company name or business address. *See* Doc. 104-4, p. 5.

Seeing that the companies were at an impasse, KEI sued both Khol and Mr. Barber for breach of contract in state court on November 21. *See* Doc. 3. Khol removed the case to this Court on January 11 and filed an answer, asserting that the breach-of-contract claim was "barred for lack of privity" because "[t]he alleged contract was not signed by an authorized representative of Defendant" and "[t]he signature on the contract is a forgery." (Doc. 6, ¶¶ 31–33).

On February 1, 2023, KEI filed a first amended complaint (Doc. 9) accusing Khol, Mr. Barber, and Mrs. Barber—jointly—of fraud. In KEI's view, the three Defendants cooked up a scheme to induce KEI to haul sand, knowing all the while that Khol did not intend to pay for the service. Khol filed an answer to the first amended complaint, denying the fraud claim and reiterating that it was not in breach because "[t]he alleged contract was not signed by an authorized representative of Khol." (Doc. 22, ¶ 69(h)).

By the time KEI finally located and served the Barbers in Texas in March 2023, they hired counsel and moved to dismiss all claims against them for lack of personal jurisdiction. The Court denied their motion, *see* Doc. 41, and they filed an answer to the first amended complaint on June 15, 2023—along with counterclaims for setoff, recoupment, and tortious interference with contract. *See* Doc. 42.

The Barbers admitted in their answer that Mr. Barber had authorized Mrs. Barber to sign the contract on his behalf, which meant Khol was bound by it. *See id.* at ¶¶ 52–54. Given the Barbers' admission, Khol had little choice but to file an amended answer and agree that "Khol's manager and agents negotiated a hauling contract [with KEI] on behalf of Khol." (Doc. 47, ¶ 9). Separately, however, Khol filed counterclaims against KEI for breach of contract, fraud, tortious interference with an existing contract and future

3

business expectancy, and breach of express warranty of service. *See* Doc. 56. KEI responded by filing a Second Amended Complaint (Doc. 60)—which is now the operative pleading—bringing the breach of contract claim against Khol and Mr. Barber; adding an alternative claim for unjust enrichment; reasserting the fraud claim against Khol, Mr. Barber, and Mrs. Barber; and demanding that the Court impose a corporate receivership on Khol.[3] The Barbers answered the Second Amended Complaint on September 1, 2023, and reasserted their counterclaims for setoff, recoupment, and tortious interference. *See* Doc. 68.

Below, the Court will first consider whether summary judgment is appropriate as to any of KEI's affirmative claims in the Second Amended Complaint. Next, the Court will evaluate whether the Barbers' First Amended Counterclaims for setoff and recoupment should be dismissed on summary judgment. After that, the Court will analyze Khol's Counterclaims for breach of contract, express warranty, and fraud. And finally, the Court will turn to KEI's request for summary judgment as to Khol's and the Barbers' separate Counterclaims for tortious interference.

## II. LEGAL STANDARD

In evaluating the parties' cross-motions for summary judgment, the Court must consider whether they established both the absence of a genuine dispute of material fact

---

[3] The request for a corporate receivership is not a standalone cause of action, and the Court declines to address it in this Order. *See Gordon v. Washington*, 295 U.S. 30, 37 (1935) ("A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself."); *Gross v. Mo. & A. Ry. Co.*, 74 F. Supp. 242, 244 (W.D. Ark. 1947) ("[T]he appointment of receivers is within the sound discretion of the court, and the receivership is ancillary to the main object of the suit as set forth in Rule 66.").

and entitlement to judgment as a matter of law as to any claim. See Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). Each motion for summary judgment should be reviewed in its own right, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); see *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998). For there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.  DISCUSSION

#### A.  KEI's Claims

KEI's first claim is for breach of contract against Khol and Mr. Barber. "In order to prove a breach-of-contract claim, one must prove the existence of an agreement, breach of the agreement, and resulting damages." *Jones v. John B. Dozier Land Trust*, 511 S.W. 3d 869, 873 (Ark. Ct. App. 2017). It is undisputed that KEI and Khol entered into a contract for KEI to haul sand from one location to another in exchange for payment. It is further undisputed that KEI hauled at least some amount of sand to the agreed-upon location but was never paid. Therefore, Khol is liable for breach of contract as a matter of law, and

KEI is entitled to summary judgment on liability for the breach. The amount of damages owed to KEI is reserved for trial.[4]

As for Mr. Barber's individual liability for breach of contract, it is undisputed that Khol lost its Texas corporate charter from June 2022 to February 2023 due to nonpayment of franchise taxes. *See, e.g.*, Doc. 104-14, p. 10 (Fein Depo.); Doc. 60-1; Doc. 140, ¶ 8. Under Texas law, when a corporation forfeits its corporate privileges, an officer who enters into contracts on behalf of the corporation after dissolution may be held personally liable under those contracts. *See* Tex. Tax Code § 171.255(a).[5] Khol entered into the contract with KEI in Texas and breached the contract during the period of time when Khol had forfeited its corporate privileges. Therefore, Mr. Barber is individually liable for Khol's breach of contract.[6]

As for KEI's fraud claim, there are two theories: first, that Khol, by and through its member, Mr. Barber, informed KEI that the sand-hauling arrangement would last for about two years, and KEI, in reliance on that misrepresentation, made capital investments in

---

[4] Since the parties agree that an express contract governs the dispute, KEI's unjust enrichment claim is subject to dismissal. *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612 (2005) (finding that "the concept of unjust enrichment has no application when an express written contract exists"). Mr. and Mrs. Barber moved for summary judgment on unjust enrichment, but Khol did not. Therefore, the Court dismisses the claim of unjust enrichment as to Khol, *sua sponte*.

[5] Section 171.255(a) of the Texas Tax Code provides:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

[6] It would appear that Khol's other member, Mr. Fein, is also individually liable, but he is not a party to this suit.

6

trucks and trailers and hired subcontractors to its detriment; and second, that Khol and the Barbers conspired to have Mrs. Barber sign her husband's name to the contract so that Khol could later claim the signature was inauthentic and Khol was not bound. Proving fraud requires the following: (1) a false representation, usually of a material fact; (2) knowledge or belief that the representation was false; (3) intent to induce the plaintiff to rely on the false representation; (4) justifiable reliance; and (5) damages. *See Wiseman v. Batchelor*, 315 Ark. 85, 89 (1993).

KEI's first fraud theory—that Khol affirmatively represented that the contract would last two years—is contradicted by the fully executed and enforceable contract, which contains no term of years. "[T]he language contained in the contract is the best evidence of the parties' intention." *Connect Commc'ns Corp. v. Sw. Bell Tel., L.P.,* 467 F.3d 703, 714 (8th Cir. 2006) (citing *First Nat'l Bank v. Griffin,* 310 Ark. 164, 168 (1992)). Therefore, even if KEI is correct that "*[p]rior to entering the agreement*, Khol and T. Barber told KEI that the Project would last for one to two years," (Doc. 106, p. 6 (emphasis added)), the two-year term did not make it into the final written contract. Accordingly, there is no genuine, material dispute that any of the three Defendants misrepresented the duration of the project.

As for the second fraud theory, KEI claims that the three Defendants conspired to deny the validity of the contract between Khol and KEI. Certainly, they initially denied the validity of the contract in the context of this litigation, but there is no evidence that they conspired prior to suit; nor is there evidence that Khol had no intention of paying KEI for its services when the parties first came to an agreement. KEI's references to certain portions of Mr. Fein's deposition fail to prove that Khol never intended to pay KEI. Those

7

deposition excerpts pertain to Khol's contracts with other vendors. *See* Doc. 105, p. 7 (citing exclusively to Doc. 104-14 (Fein Depo), 44:1 – 45:5, 47:14–49:25, 52:15–53:24, 87:2–89:14, 94:21–96:20) Therefore, the second fraud theory is subject to dismissal on summary judgment.[7]

In view of the above rulings, KEI's Motion for Summary Judgment as to its claims in the Second Amended Complaint (Doc. 104) is **GRANTED** with respect to liability for breach of contract, but **DENIED** as to damages for breach of contract, unjust enrichment, and fraud. Separate Defendant Tom Barber's Cross-Motion for Summary Judgment (Doc. 113) is **GRANTED** as to KEI's unjust enrichment and fraud claims—which are dismissed with prejudice—but **DENIED** as to breach of contract. Separate Defendant Candice Barber's Cross-Motion for Summary Judgment (Doc. 116) is **GRANTED** as to fraud—the sole claim asserted against her by KEI—which is dismissed with prejudice.

## B. The Barbers' Counterclaims for Setoff and Recoupment

KEI moves for summary judgment on the Barbers' Counterclaims for setoff and recoupment. The Barbers contend that KEI is obligated to reimburse Mr. Barber for a $90,000 personal loan he took out for the benefit of Khol, and the Barbers blame KEI for their "loss of enjoyment of business expectancy distributions" and "loss of investments in Khol including but not limited to loss of goodwill and overall business valuation." (Doc. 68, ¶ 118). They cite no evidence to support their claim that KEI is legally responsible for their personal debts and business losses. Therefore, KEI's Motion for Summary Judgment as

---

[7] Even though the summary judgment evidence fails to support a claim of fraud against *any* of the Defendants, only the Barbers move for summary judgment—which means the fraud claim against Khol must advance to trial.

to the Barbers' First Amended Counterclaims for setoff and recoupment (Doc. 107) is **GRANTED**.

### C. Khol's Counterclaims for Breach of Contract, Express Warranty, and Fraud

Khol's Counterclaims against KEI for breach of contract and breach of express warranty concern KEI's alleged promise to haul a particular quantity of sand by a particular deadline. Khol maintains that KEI's failure to meet an internal deadline that does not appear in the written contract caused Khol to breach its contract with an end-user of the sand, a company called NexTier. Relatedly, Khol contends that KEI affirmatively misrepresented that it could haul a particular quantity of sand by a particular deadline, which Khol relied on to its detriment. This, however, is not a separate fraud claim—and will not be treated as such; it is simply the breach-of-contract claim framed in a slightly different way. *See Hobson v. Entergy Arkansas, Inc.*, 2014 Ark. App. 101, 10 (2014) ("Broken promises are . . . generally within the realm of breach-of-contract actions, and not fraud actions.").

According to Khol, even though the written contract stated that KEI would be paid for every ton of sand it hauled, *see* Doc. 104-1, the parties supposedly agreed—both orally and through texts and emails—that KEI *would be paid nothing*, *no matter how much sand it hauled*, unless it sent fifteen trucks per day to the sand pit and hauled 18,000 to 20,000 tons of sand by the end of September 2022. Unfortunately for Khol, there is no evidence that KEI agreed to provide fifteen trucks per day. In fact, Mr. Barber testified that he only had an "expectation" about the number of trucks and not "a contract for that." *See* Doc. 104-12, 60:15–19. As for quantities and deadlines, Mr. Barber first claims that KEI agreed to deliver a minimum of 6,000 tons of sand during the month of September.

9

*See* Doc. 137-2, ¶¶ 2–3. Even if he's right about that, Khol does not dispute that KEI actually hauled 7,261 tons of sand by September 20, 2022. *See* Doc. 144, p. 7. Nevertheless, Mr. Barber's further claim is that he expected KEI "to deliver at least *an additional* 10,000 tons of sand in September (16,000 tons total for September) to for [sic] a backstop or reserve." (Doc. 137-2, ¶ 5 (emphasis added)). The problem is that Mr. Barber has no evidence to show that he and Mr. Powell had a meeting of the minds about the delivery of this extra "backstop" quantity.

If, for the sake of argument, the parties agreed orally and by text and email that KEI would haul 18,000 to 20,000 tons of sand by the end of September, Mr. Barber admits that this agreement predated the parties' signed contract—which contained no delivery deadlines. "It is a general proposition of the common law that in the absence of fraud, accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subject." *Ultracuts, Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 232 (2000) (citation modified). "Only where an ambiguity is found within the contract may parol evidence be admitted." *Id.* The Court finds no ambiguity in the contract. Khol unambiguously agreed to pay KEI for each ton of sand it hauled, up to a certain total quantity. KEI's Motion for Summary Judgment as to Khol's Counterclaims for breach of contract, express warranty, and fraud is therefore **GRANTED**.

### D. Khol's and the Barbers' Counterclaims for Tortious Interference

Khol and the Barbers also bring Counterclaims against KEI for tortious interference with an existing contract with NexTier and with Khol's future business expectancy with NexTier. Under Arkansas law, there are four elements to the tort of intentional business

interference: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Baptist Health v. Murphy*, 2010 Ark. 358, 15 (2010).

There is no evidence that KEI had specific knowledge of the terms of Khol's contract with NexTier or had any contact with NexTier's agents or employees. Assuming KEI knew generally that Khol and NexTier were involved in a contractual relationship, there is no evidence that KEI intentionally interfered with that contract. Furthermore, the Court has already determined that KEI did not breach its contract with Khol—which is fatal to Khol's tortious interference claim that rests on KEI's supposed failure to meet extra-contractual delivery deadlines. Moreover, NexTier's Vice President, Timothy M. Ondrak, testified that Khol had no future business expectancy with NexTier. *See* Doc. 104-15, 23:16–20, 24:4–5 (Ondrak Depo.) ("Q. Would you say these discussions [on future business with Khol] were really just negotiations? A. Yeah. I think they were negotiations. . . . Q. You all never came to an actual agreement on that? A. No."). Therefore, even if a future business expectancy had existed, there is no evidence that KEI knew about it, let alone intentionally interfered with it. KEI is **GRANTED** summary judgment on Khol's and the Barbers' Counterclaims for tortious interference, which will be dismissed with prejudice.

## IV. CONCLUSION

**IT IS ORDERED** that KEI's Motion for Summary Judgment as to the Claims in the Second Amended Complaint (Doc. 104) is **GRANTED IN PART AND DENIED IN PART**.

KEI's Motion for Summary Judgment as to the First Amended Counterclaims filed by Tom and Candice Barber (Doc. 107) is **GRANTED**, and KEI's Motion for Summary Judgment as to the First Amended Counterclaims filed by Khol (Doc. 110) is also **GRANTED**. KEI is entitled to judgment against Khol and Mr. Barber on liability for breach of contract, but damages for the breach are reserved for trial. Khol's Counterclaims (Doc. 56) and the Barbers' Counterclaims (Doc. 68) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Tom Barber's Cross-Motion for Summary Judgment (Doc. 113) is **GRANTED IN PART AND DENIED IN PART**. His request for the dismissal of KEI's unjust enrichment and fraud claims is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**. His request to dismiss KEI's breach of contract claim is **DENIED**.

**IT IS FURTHER ORDERED** that Candice Barber's Cross-Motion for Summary Judgment (Doc. 116) is **GRANTED** in full, and the sole claim against her for fraud is **DISMISSED WITH PREJUDICE**. Accordingly, Candice Barber is **DISMISSED AS A PARTY TO THIS ACTION**.

**IT IS FURTHER ORDERED** that KEI's claim against Khol for unjust enrichment is **DISMISSED WITH PREJUDICE**, *sua sponte*.

**IT IS FURTHER ORDERED** that the parties' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Docs. 63, 66, 69, 73) are **MOOT** in light of the Court's rulings herein on the merits.

**IT IS FURTHER ORDERED** that KEI's Motion to Exclude the Testimony of Robert Vance (Doc. 101) is **MOOT** in light of the Court's dismissal of Khol's and the Barbers' Counterclaims.

By separate Order, the Court will set for trial KEI's claim for damages for breach of contract against Khol and Mr. Barber and KEI's fraud claim against Khol.

**IT IS SO ORDERED** on this 30th day of September, 2025.

> */s/ Timothy L. Brooks*
> TIMOTHY L. BROOKS
> CHIEF UNITED STATES DISTRICT JUDGE